UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TERRY TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-CV-00048 ERW |
| ) | |
| GEORGE A. LOMARDI, et al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's *ProSe* Motion for Summary Judgment and Suggestions in Support of Motion [ECF No. 57] and Defendants' Motion for Summary Judgment [ECF No. 62].

**I.    Background**

Terry Turner, ("Plaintiff"), a prisoner in the Missouri Department of Corrections, filed a complaint alleging Kendis Archer, Thomas Pryor, Tomas Cabrera, Milo Farnham, Jessica Ballinger, and Gladys Dixon ("Defendants") were deliberately indifferent to his serious medical needs, in violation of 42 U.S.C. § 1983, for failing to provide reasonable medical treatment for his demyelinating disorder.[1] [ECF No. 1]. In Plaintiff's *pro se* Motion for Summary Judgment and Suggestions in Support of Motion, he argues summary judgment is inappropriate, because he has stated a claim of deliberate indifference to his serious medical needs and denial of his due process rights. [ECF No. 57]. Defendants, four physicians and two nurses employed by the Missouri Department of Corrections, argue in their Motion for Summary Judgment [ECF No. 62], they were not deliberately indifferent to Plaintiff's serious medical needs because they

---

[1] A demyelinating disease is a disease of the nervous system causing deficiency in sensation, movement, and cognition.

1

followed the recommendations for care of outside specialists; Plaintiff presents no evidence linking Defendants' actions to Plaintiff's injuries; and Plaintiff consistently refused his medications.

      A.        *Factual Background*

Plaintiff did not file a statement of material facts with his summary judgment motion [ECF No. 57], and did not respond to Defendants' Statement of Material Facts [ECF No. 64], as required under Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule 4.01(E). Defendants responded to uncited and unsupported factual assertions made throughout Plaintiff's Motion for Summary Judgment, in their response motion. [ECF No. 63]. Plaintiff, subsequently, filed a Motion for Leave to Amend, asserting six facts he believes are material in this matter [ECF No. 76].

Plaintiff's status as a *pro se* prisoner does not excuse him from responding to Defendants' motion "with specific factual support for his claims to avoid summary judgment,", or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983; *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993) (failing to allow *pro se* prisoner to disregard Federal Rules of Civil Procedure). With his failure to respond, Plaintiff is deemed to have admitted all of the facts in Defendants' statement of uncontroverted facts. *Turner v. Shinseki*, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D.Mo. Jun. 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F.Supp.2d 1166, 1168 (E.D.Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877); *Davis v. Webb*, No. 4:11-CV-1906-JAR, 2014 WL 1314938, at *1 (E.D. Mo. Mar. 28, 2014), *reconsideration denied*, 2014 WL 1809680 (E.D. Mo. May 7, 2014), and *aff'd* 590 F. App'x 655 (8th Cir. 2015); *Foster v. Lombardi*, No. 1:12-CV-116 JAR, 2014 WL 636042, at *1 (E.D. Mo. Feb. 18, 2014).

Plaintiff alleges he has responded to the statement of undisputed material facts, by alleging he was given medication for multiple sclerosis from 1999 until 2014. [ECF No. 72 at ¶8]. However, this is not a response with specific factual support for his claims. Plaintiff also provided eighty-seven pages of exhibits along with his complaint, mostly consisting of his own medical records. These are the only exhibits he has presented. The Court reviewed these records, but it is not clear what records Plaintiff hopes to use as support for his claims. Plaintiff identifies certain facts throughout his motions, which he believes are appropriate for a jury to decide, but fails to support these facts with references to the record. The Court is not obliged to speculate on which portion of the record the party relies, nor is the Court required to review the entire record to find specific facts which may support the nonmoving party's claim. *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)).

Summary judgment is not granted for Defendants as a result of Plaintiff's failure to properly respond to Defendant's statement of material facts. Instead, the Court deems the facts set forth by Defendants as true. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendants must still establish they are entitled to judgment as a matter of law. *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 191 (Mo. Ct. App. 2010) (citations omitted). The facts are as follows.

Plaintiff, is an offender confined in the Missouri Department of Corrections. He is currently housed at the Eastern Reception and Diagnostic Correction Center in Bonne Terre, Missouri. From October 2011 until January 2013, he was housed at the Western Missouri Correctional Center in Cameron, Missouri. From January 2013, until sometime after the commencement of this lawsuit, he was housed at the Northeast Correctional Center in Bowling Green, Missouri.

[ECF Nos. 68, 64 at ¶ 1-3]. Defendants Dr. Kendis Archer, Dr. Tomas Cabrera and Dr. Thomas Pryor are physicians employed at the Northeast Correctional Center within the Missouri Department of Corrections. [ECF No. 64 at ¶ 1]. Defendants Jessica Ballinger and Gladys Dixon, are employed as nurses at the Western Missouri Correctional Center. [EFC No. 64 at ¶ 17]. Plaintiff has not had contact with either Defendant Ballinger or Defendant Dixon since he was transferred in 2013. *Id.* Defendant Dr. Milo Farnham was a physician employed at the Western Missouri Correctional Center during Plaintiff's confinement. [ECF No. 64 at ¶ 18].

Plaintiff entered the Missouri Department of Corrections in 2006. [ECF No. 64-1 at 5-7]. Plaintiff has a history of demyelinating disease in his lower extremities, and was using back braces, leg braces, and a wheelchair prior to being seen by any defendant. [ECF No. 61 at ¶4]. Plaintiff suffers from numerous physical ailments including vomiting, urinary and bowel incontinence, and decreased use of his legs. [ECF No. 61 at ¶¶ 11-12.] Plaintiff was diagnosed with multiple sclerosis by Dr. Phillip Dean, an outside specialist not associated with Defendants, in March 1999. Dr. Dean treated Plaintiff with interferon (Rebif or Avonex) and glatiramer acetate (Copaxone). [ECF No. 61 at ¶ 15, 64 at ¶¶5-6]. Plaintiff also received care from Dr. Alcorn, his personal physician at the time, from approximately 2000 to 2006. As part of his treatment he received Avonex shots. [ECF No. 10]. Plaintiff's claims are not premised on any care provided prior to July 14th, 2010. [ECF No. 72 at ¶ 10].

Plaintiff was referred to Dr. Sudhir Batchu, an outside neurology specialist, at the Columbia Center for Neurology and multiple sclerosis, for evaluation of his demyelinating condition in 2009 and 2010. [ECF No. 64 at ¶¶ 10-11]. Dr. Batchu diagnosed Plaintiff with a demyelinating disease and prescribed Copaxone and Avonex. [ECF No. 64 at ¶12]. Throughout the time period of his complaint, Plaintiff was also referred to other neurology specialists including, Dr. Al-Lozi,

4

and Dr. Rolan, and been treated at Barnes Jewish Hospital, Washington University, and the University of Missouri. [ECF N. 64 at ¶ 15]. Plaintiff has also undergone multiple tests, including MRIs[2] and EMGs.[3] [ECF N. 64 at ¶ 15].

Plaintiff is able to refuse any medication prescribed to him by his physicians, including Defendants, by signing a refusal of medication form. By his own estimates, he refused medications nine hundred ninety times. [ECF No. 64 at ¶¶ 19-22]. He first began refusing medication on January 18, 2012, at Western Missouri Correctional Center and continued refusing medications at Northeast Correctional Center. [ECF No. 64 at ¶¶ 19-22].

On January 4, 2012, Dr. Farnham ordered interferon based upon Plaintiff's demyelinating disorder and a prior prescription from Dr. Batchu. Plaintiff received this interferon injection on January 13, 2012, without concern. [ECF No. 64 ¶¶ 24-27]. On January 18, 2012, Plaintiff refused to take his interferon, signed a refusal of medication form, and has since refused his medication. [ECF No. 64 ¶¶ 28-29, 35-37]. Nurses Ballinger and Dixon were witnesses to this refusal, and Nurse Ballinger referred Plaintiff for further treatment. [ECF No. 64 ¶¶ 28-29, 35-37]. On January 20, 2012, Dr. Farnham learned of these refusals, and ordered his interferon order be discontinued. On January 24, 2012, Dr. Farnham met with Plaintiff and expressed concern over his failure to take the medications. Plaintiff made it clear he did not want to take these medications, and the medications were discontinued. [ECF No. 64 ¶ 30]. Dr. Farnham did not provide additional medical care to Plaintiff, because Dr. Farnham was transferred to a different facility. [ECF No. 64 ¶ 31]. Plaintiff continued to refuse to take his medications in 2012. Nurses Ballinger and Dixon did not interfere with Plaintiff's right to refuse his medication. [ECF No. 64 ¶¶ 32, 35-39].

---

[2] Magnetic Resonance Imaging
[3] Electromyography

5

Plaintiff was transferred to Northeast Correctional Center in January 2013. [ECF No. 64-1 at 4]. Dr. Archer first examined Plaintiff on May 15, 2013, at Northeast Correctional Center, and referred him to Dr. Batchu, who examined Plaintiff on May 29, 2013. Dr. Batchu recommended MRIs, lab work and further follow up after results from the tests were received. [ECF No. 64 ¶¶ 41-42]. Dr. Archer followed Dr. Batchu's recommended choice of care including testing with an MRI, and for further referral to Dr. Batchu. Dr. Batchu noted his plan of care was being followed. [ECF No. 64 at ¶ 43]. After Plaintiff initially refused his appointment to see Dr. Batchu, on a follow-up visit Dr. Batchu referred Plaintiff to Washington University for a second opinion, but only after Dr. Archer counseled Plaintiff. [ECF No. 64 at ¶¶ 44-45]. One of Plaintiff's primary allegations against Dr. Archer is his refusal to perform a brain biopsy test recommended by Dr. Batchu, yet the medical records show Dr. Batchu wanted a second opinion at Washington University neurology instead, and Plaintiff admits Dr. Archer did schedule a brain biopsy. [ECF No. 64 at ¶ 40]. Dr. Archer continued medications in accordance with the specialists' treatment plans, performed an examination, and referred Plaintiff to neurologists at Washington University for consultation, although this was delayed to allow for further testing. [ECF No. 64 at ¶¶ 46-48]. After an initial rescheduling, because of Plaintiff's illness, Plaintiff saw Dr. Batchu again for EMG testing, where Dr. Batchu confirmed Plaintiff had a demyelinating neuropathy. [ECF No. 64 at ¶¶ 49-50]. Dr. Archer referred Plaintiff for a follow up with Dr. Batchu, where Dr. Batchu re-examined Plaintiff and confirmed a demyelinating disorder of the lower extremities, and prescribed new medications. [ECF No. 64 at ¶¶ 51-52]. Dr. Archer followed the plan of care prescribed by Dr. Batchu and Plaintiff's other specialists. [ECF No. 64 at ¶¶53-54].

Dr. Cabrera, an outside neurologist at Washington University, consulted with Dr. Batchu,

and Dr. Al-Lozi. [ECF No. 64 ¶¶ 55-56]. While the MRI and subsequent diagnoses by Dr. Al-Lozi determined there was no organic cause for his current symptoms, Dr. Cabrera did not have any further involvement in Plaintiff's medical care for the demyelinating disorder, and only saw him for other medical care not related to his demyelinating disorder. [ECF No. 64 ¶¶ 57-60].

Plaintiff's claim against Dr. Pryor is based on Dr. Pryor's alleged renewal of his medication of Copaxone. [ECF No. 64 ¶ 61]. This medication was prescribed by Dr. Batchu, and was discontinued by Dr. Pryor after consulting with doctors at Washington University. [ECF No. 64 ¶¶ 62-63]. Dr. Pryor followed the recommendations of Plaintiff's treating neurologists, and he referred Plaintiff for further lab work on February 16, 2015. [ECF No. 64 at ¶¶ 64-65].

Plaintiff's Motion for Leave to Amend asks the Court for permission to assert an additional five facts which Plaintiff believes present material issues precluding summary judgment. These facts, uncited and unsupported by the record, focus on Defendants' inability to accurately determine which type of demyelinating disease Plaintiff has, and that they have not proved an exact diagnosis for Plaintiff's specific demyelinating disease. [ECF No. 76 at ¶¶ 4-9].

**II.     Standard**

Summary judgment is proper only if there exists "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. of Civ. Proc. 56(c); *Bores v. Domino's Pizza, LLC*, 530 F3d 671, 674 (8th Cir. 2008). The burden of proof is on the party moving for summary judgment, and all facts and reasonable inferences are to be viewed in the light most-favorable to the non-moving party. *Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008). "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, 'the nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a

7

genuine issue for trial.'" *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003) quoting *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998).

Material facts are determined by substantive law, and factual disputes which are irrelevant or collateral do not preclude Summary Judgement. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is a genuine issue, where the evidence is such a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

"[C]ourts must be sensitive to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and we do not approve summary dismissal of such *pro se* claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980) (internal citations removed) (affirming grant of summary judgment to Defendants where plaintiff prisoner stated only that he could not gather information because he was imprisoned) (citing *Hudson v. Hardy*, 412 F.2d 1091 (D.C.Cir.1968)).  Further, allegations of *pro se* prisoner plaintiffs are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).  However, *pro se* prisoners are still required to follow the rules of civil procedure and local rules. *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir.1993).

**III.   Discussion**

Plaintiff, in his *pro se* motion for Summary Judgment, argues Defendants were deliberately indifferent to his serious medical needs under 42 U.S.C. §1983, Defendants denied his due process rights, and summary judgment is inappropriate against him because he is a *pro se* prisoner litigant. [ECF No. 57].  Defendants argue, in their response, the Court previously dismissed Plaintiff's claim for due process; Plaintiff offers no evidentiary support for his claim of deliberate indifference; he produced no expert evidence to support the causation of his claims;

and each defendant provided the proper medical care and was not deliberately indifferent to Plaintiff's serious medical needs. [ECF No. 61].

Defendants also filed a summary judgment motion in which they argue Defendants cannot have been deliberately indifferent to Plaintiff, because they referred him for outside specialty care, followed the recommendations of those specialists, and let Plaintiff decide to refuse his medications, which Plaintiff regularly did.  Further, Plaintiff has presented no evidence Defendants acted deliberately, and has presented no evidence of causation. [ECF Nos. 62 and 63].  In Plaintiff's response, he argues material facts preclude summary judgment, and it is inappropriate to determine a case at the summary judgment stage, unless there are no facts which would entitle him to relief. [ECF No. 65].  Defendants' reply argues a *pro se* litigant must follow procedural rules, Plaintiff cannot show deliberate indifference of a serious medical needs or a causal link between Defendants and his injuries, and any claims before 2010 are unavailable due to the statute of limitations.  [ECF No. 67]. Plaintiff's sur-reply argues he was misdiagnosed and provided the wrong medications and Defendants were aware he had the wrong diagnosis.  Further, he contends he is not premising his claims on events which happened prior to 2010, and while he did refuse his medications, he had no choice, because he felt the medications were slowly killing him. [ECF No. 72].  The Court will address both motions.

    A.  *Plaintiff's Due Process Claim*

Plaintiff, in his *pro se* summary judgment motion, attempts to assert a claim for violation of due process rights.  The Court has previously dismissed this claim in an earlier motion. [ECF No. 32]. Plaintiff presents no argument or support why this claim should be reconsidered, even if it was proper to reconsider the claim at this stage.  Therefore, Plaintiff's claim for alleged due process violations will be denied.

### B. *Plaintiff's Claim for Deliberate Indifference of His Serious Medical Needs*

Plaintiff's remaining claim is a claim for deliberate indifference of his serious medical needs under 42 USC § 1983, based on Defendants failure to properly treat his peripheral demyelinating disease. Defendants make three primary arguments in favor of denying Plaintiff's claim. Defendants first argue Plaintiff's medical care for his demyelinating disorder never rose to a level of constitutional violation or caused him injury, because physician defendants referred plaintiff to outside specialists, relied on the recommendation of those specialists, and provided care in accordance with those recommendations, and the nurse defendants did not prescribe or order his care, and allowed Plaintiff to refuse medications.  Second, Defendants assert Plaintiff has not presented sufficient facts or evidence to establish Defendants acted with deliberate indifference towards Plaintiffs serious medical needs, and he presented no expert testimony which is required in a case with complex medical injuries.  Finally, Defendants argue Plaintiff admits he repeatedly refused medications provided to him, he was allowed to do so, and the injuries Plaintiff suffers are the symptoms of demyelinating disorder; thus, the diagnosis and treatment were appropriate.

### 1. *Referral to Outside Specialists*

To state a constitutional claim for medical mistreatment, a plaintiff must plead facts sufficient to indicate a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). "[The Eighth Circuit] ha[s] defined a serious medical need as 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos*, 73 F.3d at 176 (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, Plaintiff must allege he suffered objectively serious medical needs and Defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Medical malpractice, an inadvertent failure to provide adequate medical care, and negligence do not rise to this standard. *Id.* at 1243. A plaintiff must prove the defendant medical professionals were more than negligent, and had a mental state "akin to criminal recklessness" to successfully claim a deliberate indifference claim. *McCaster v. Clemons*, 684 F.3d 740, 746 (8th Cir. 2012), *quoting Gorden ex. Rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Mere differences of medical opinion are insufficient to establish deliberate indifference. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991).

Plaintiff alleges a claim of deliberate indifference to his serious medical need, based on Defendants refusal to properly treat his peripheral demyelinating disease. [ECF No. 57 at 1]. Plaintiff principally alleges multiple sclerosis was ruled out in 2011, yet through 2014, Defendants failed to change his medications, and these medications led him to have terrible symptoms of vomiting, urinary and bowel incompetence, decreased used of his legs, and confinement to a wheel chair and braces. [ECF No. 57 at 1-2]. Plaintiff alleges Defendants actions constitute unreasonable and medically unsound treatment; thus, Defendants were deliberately indifferent to his serious medical needs.

Defendants argue Plaintiff cannot prove a single defendant was deliberately indifferent, because the physician defendants referred Plaintiff to outside specialists, and acted in accordance with the specialists' recommendations, including the ordering of prescribed medicine.

Plaintiff has a serious medical need and Defendants do not dispute this. While the accuracy

11

of the diagnosis is in dispute, Plaintiff has been diagnosed with a disorder, and Defendants do not attempt to dispute this. However, in order to succeed on his claim, Plaintiff must also prove Defendants were deliberately indifferent as well. The Court now addresses these allegations for each individual defendant.

### a. Dr. Farnham

Dr. Farnham was a physician who saw Plaintiff during Plaintiff's confinement at the Western Missouri Correctional Center in Cameron, Missouri. Dr. Farnham initially saw Plaintiff for his demyelinating disorder on January 4, 2012, and ordered the continued prescription of interferon, based on the recommendation of Dr. Batchu, a board certified neurologist. Plaintiff took this first medication on January 13, 2012, but on January 18, 2012, Plaintiff refused this medication and all others. Four days after learning of Plaintiff's refusal, on January 24, 2012 Dr. Farnham met with Plaintiff and counseled him on his refusal to take his medication. Shortly after this meeting, Plaintiff was transferred to a different facility, and had no further contact with Dr. Farnham.

Dr. Farnham met with Plaintiff multiple times, counseled him on his refusal to take medication, and followed the recommendations of a board certified neurologist. Plaintiff fails to meet the high standard required for a claim of deliberate indifference to a serious medical need. Plaintiff does not present a claim against Dr. Farnham.

### b. Dr. Cabrera

Dr. Cabrera was a physician at the Northeast Correctional Center during all the pertinent times of the complaint. Dr. Cabrera's medical care with Plaintiff was limited to consultations with neurology specialists at Washington University and a referral for repair of Plaintiff's knee brace. Plaintiff admits he does not have much "proof" in regards to Dr. Cabrera's potential liability.

12

Dr. Cabrera met with specialists and followed their recommendations in regards to Plaintiffs care.  Like, Dr. Farnham, this evidence does not meet the heightened standard required for a claim of deliberate indifference to a serious medical need. Plaintiff's claim against Dr. Cabrera will be denied.

### c.  Dr. Archer

Dr. Archer provided Plaintiff medical care as a physician at the Northeast Correctional Center, during the pertinent times of the complaint. Dr. Archer referred Plaintiff for further evaluation or treatment in relation to his demyelinating disorder on thirteen separate occasions, of which nine were for referrals to outside specialists, during the time period of May 15, 2013 to February 10, 2014.  Dr. Archer followed the recommendation of those specialists, including the prescription of medication at issue in this case.  At times there were delays in referrals, but there was good cause for the delay such as Plaintiff's illness, allowing for further testing, and Plaintiff's refusal to attend a referral.

Dr. Archer treated Plaintiff multiple times, and in doing so followed the recommendations of the board-certified neurologists. Further, Dr. Archer continued to refer Plaintiff to these neurologists. Dr. Archer followed the recommendations of the neurologists and continued to meet with Plaintiff. Plaintiff has failed to meet the high standard akin to criminal recklessness. Therefore, Plaintiff does not present a claim against Dr. Archer for deliberate indifference of a serious medical need.

### d.  Dr. Pryor

Dr. Thomas Pryor provided medical care to Plaintiff while employed as a physician at the Northeast Correctional Center. Plaintiff's claim against Dr. Pryor is based on Dr. Pryor's alleged renewal of his medication of Copaxone until Plaintiff was evaluated at Washington University.

[ECF No. 64 ¶ 61].  This medication was initially prescribed by Dr. Batchu, an outside neurological specialist, and was stopped by Dr. Pryor after consulting with doctors at Washington University. [ECF No. 64 ¶¶ 62-63].  Dr. Pryor followed the recommendations of Plaintiff's treating neurologists, and referred Plaintiff for further lab work on February 16, 2015 [ECF No. 64 ¶¶ 64-65].

Dr. Pryor met with Plaintiff multiple times, and referred him to outside specialists multiple times.  Dr. Pryor, in following the recommendations of the neurologists and in continuing to meet with Plaintiff, was not criminally reckless as required for a claim of deliberate indifference of Plaintiff's serious medical needs. Therefore, a claim of deliberate indifference to a serious medical need against Dr. Archer fails.

### e.  Nurses  Jessica Ballinger and Gladys Dixon

Defendants Jessica Ballinger and Gladys Dixon, provided medical care to Plaintiff as nurses employed at the Western Missouri Correctional Center. On January 18, 2012, Nurses Ballinger and Dixon witnessed Plaintiff refusing to take his interferon, and signing a refusal of medication form. [ECF No. 64 ¶¶ 28-29, 35-37]. Plaintiff continued to refuse to take his medications in 2012, and Nurse Ballinger and Nurse Dixon did not interfere with Plaintiff's right to refuse his medication. [ECF No. 64 ¶¶ 32, 35-39]. When Plaintiff first refused to take his medication on January 18, 2012, Nurse Ballinger referred Plaintiff for further evaluation.  [ECF No. 64 at ¶ 35].

Nurses Ballinger and Dixon, never interfered with Plaintiff's refusal to take his medication, and when Plaintiff first began to refuse his medication, Nurse Ballinger referred Plaintiff for further treatment.  Plaintiff contends he was forced to take his medication, but also concedes he was allowed to refuse his medication, and estimates he did so approximately nine hundred ninety-nine times.  In allowing Plaintiff to refuse his medical treatment, yet always offering it,

14

and referring Plaintiff for evaluation when he began to refuse his medication, Nurse Ballinger and Dixon were not deliberately indifferent. Further, the Nurse Defendants did not choose his course of medication, did not force him to take it, and did not prevent him from receiving it. There is nothing in these facts or allegations which supports a claim for deliberate indifference. Therefore, Plaintiffs claim against both Nurse Defendants will be denied.

### 2. *Plaintiff's Evidentiary Support of His Claims*

Defendants also argue Plaintiff presents no evidence to support his injury, and submits no expert opinion showing how these medications have caused him injury. Plaintiff does not specifically argue against this premise, but instead argues as a prisoner *pro se* plaintiff, these questions of fact should be decided by a jury.

Plaintiff has not presented any evidence Defendants have caused him any injury. Nor has he presented any evidence the treatment or lack of treatment provided by Defendants had any effect on his symptoms. Prior to 2010, the start of the time period for Plaintiff's claims, he was already having many of the symptoms he complains of now, including: the use of wheelchair, urinary incompetence, and the use of braces. Further, prior to the time period of Plaintiff's complaint, he was taking many of the same medications he argues were the subject of his complaint.

Plaintiff presents nothing more than bare allegations to link his claims to his injuries. Plaintiff's claims of injury are incredibly complex, and a medical expert is needed to fully verify his complaints. However, Plaintiff has not presented anything beyond his own medical records to the Court, and his factual allegations are uncited, unsupported and unclear in regards to those medical records. The Court has read Plaintiff's records and does not find any evidence linking his symptoms to the medication he has received or refused.

The submitted medical records reveal efforts by several doctors to determine the precise

15

diagnosis of Plaintiff's illness. He presented himself at the University of Missouri Hospital December 3, 2008. He had previously been diagnosed with multiple sclerosis, but the physician at the hospital did not agree that his examination and history seemed like multiple sclerosis. When he was examined at another facility on February 2, 2010, it was suggested films were needed to look for other causes of demyelinating disease. In October and December 2010, he was assessed for many diseases, including multiple sclerosis and it was concluded the findings may be associated with "demyelinating process." Once again, in February and March 2011, doctors differed on whether it was multiple sclerosis, polio, or something else. In November 2011, there was a discussion of Alzheimer's disease, and it was believed he had a demyelinating problem, multiple sclerosis had not been confirmed. However, in January 2012, his medical records indicate multiple sclerosis was believed to be the cause.

The medical records indicate Plaintiff acknowledge to a doctor, he did not know "what my condition really is and I don't want to take anything to make it worse." He was assessed again in December 2013 for multiple sclerosis. On June 5, 2014, there is a typed letter revealing Plaintiff's health took a turn for the worse in 1982, when, in a bull riding accident, a bull fell on him and broke his back.

The records supplied are not complete. Doctors' names and hospitals are not included on most of the records. In this incomplete record, there are many letters which are presented to be written by Plaintiff. They outline his recollection of his medical history. He is clear in stating he believed he did not have multiple sclerosis.

Clearly none of the physicians referenced in Plaintiff's medical exhibit, including named defendants, committed any act or occasion suggesting deliberate indifference to serious medical needs. The only evidence Plaintiff presents is his own allegations, which are not enough to

prevent summary judgment. Therefore, because Plaintiff has not presented any evidence of a connection between his claimed injuries and the alleged deficient medical care, the Court will grant summary judgment in favor of Defendants

       *3. Plaintiff's Refusal to Take Medications*

For his claim of deliberate indifference, Plaintiff alleges Defendants refused to properly treat his peripheral demyelinating disease, and they forced him to take medications for multiple sclerosis even though this was ruled out as a possible cause in 2011. [ECF No. 72 at 2]. Defendants produced Plaintiff's refusal of treatment documents, and Plaintiff acknowledges he refused treatment approximately nine hundred ninety nine times. [ECF No. 64 at ¶20].  Further, Plaintiff acknowledges by signing of the refusal of treatment documents, he understands he refused medication against his doctor's recommendation.  [ECF No. 64 at ¶ 19].

Despite all of this, Plaintiff, in his motions and replies, makes multiple contentions he was forced to take this treatment. Plaintiff's claims are contradictory. He presents no evidence any defendant ever interfered with his right to refuse his medication. Therefore Plaintiff's claims, to the extent they rely on this, will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Pro Se* Motion for Summary Judgment and His Suggestions in Support [ECF No. 57] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 62] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED, with prejudice**.

So Ordered this 23rd Day of September, 2016.

*/s/ E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE